[No. C. D. 5224. En Banc. October 3, 1963.]

*In the Matter of the Disciplinary Proceedings Against* BRADFORD A. CAFFREY, *an Attorney at Law.**

*T. M. Royce*, for Board of Governors.

*R. R. Bob Greive*, for respondent.

HUNTER, J.—This is a disciplinary action in which the Board of Governors of the Washington State Bar Association has charged Bradford A. Caffrey with violating the ethics of the profession in that he obtained an order of default without disclosing to the court that a special appear-

*Reported in 385 P. (2d) 383.

ance had been served upon his law office and in that he served a copy of the order on opposing counsel knowing that it had been wrongfully obtained. Mr. Caffrey denied he knew that the special appearance had been served on his office at the time he obtained the order of default. A hearing was held in Seattle before a hearing panel at which the following was disclosed:

Mr. Caffrey, as attorney for the plaintiff, commenced an action on November 28, 1961 in King County against the L. E. Belcourt Co., which was represented by attorney John Conte. A day later, Renault, Inc., was joined as a party defendant, and Mr. Caffrey, himself, made service on Renault, Inc., by serving a man he thought was its agent. Mr. Conte also represented Renault, Inc.

Mr. Conte informed Mr. Caffrey several times that he intended to appear specially for Renault, Inc., for the purpose of challenging the validity of the service. On December 28th, Mr. Conte signed a special appearance and motion to quash service but did not have it served until December 29th. Between 1:30 and 2 o'clock on the afternoon of December 29th, Mr. Brandzel, an employee of Mr. Conte's firm, took the papers for service to Mr. Caffrey's law office. There, he served them on Mr. Caffrey's secretary, who receipted them. Mr. Brandzel testified that, although he did not know him at the time, he saw, through an open door, Mr. Caffrey sitting at a desk in another room. Mr. Brandzel then returned to Mr. Conte with the special appearance bearing the receipt. Mr. Conte testified that, as he returned to his office at about 3 o'clock that afternoon, he was told that Mr. Caffrey had called previously, that he promptly returned the call, and that they had a conversation concerning the special appearance.

Shortly after 4 o'clock on December 29th, Mr. Caffrey appeared at the chambers of Judge Turner with an order of default against Renault, Inc. He had the court files with him at that time, but, because they did not contain a proof of service on Renault, Inc., the judge declined to sign the order. After explaining that it was important to get the order signed, Mr. Caffrey quickly left the chambers and

returned at approximately 4:27 p.m. with the needed affidavit. Judge Turner then signed the order of default. Mr. Caffrey at no time mentioned the service of special appearance on his law office.

On January 5, 1962, Mr. Caffrey sent Mr. Conte a copy of the motion, affidavit and order of default. Mr. Conte immediately called the matter to Judge Turner's attention, and, after discussing the matter with Mr. Caffrey, the judge, on his own motion, prepared, signed and entered an order vacating the order of default. Mr. Caffrey filed the affidavit of service on January 8th.

Mr. Caffrey testified he had not talked to Mr. Conte on December 29th about the service of special appearance nor had other knowledge of it at the time he obtained the order of default for the reasons that he was not in his office that afternoon and that his secretary did not inform him of the service until January 2, 1962. He produced testimony indicating that, on December 29th, he left his law offices at approximately noon with a friend, Mr. Tagart, and went to the county law library to do some legal work; that he and his friend remained at the library the entire afternoon, except for an occasional trip across from the library for a holiday drink, and did not return to his office before obtaining the order of default; that he left the library and went to Judge Turner's chambers; that, when informed by Judge Turner that he would not sign the order of default unless there was an affidavit of service, he returned to the library, found the unsigned draft of the affidavit, ran to the Smith Tower building and had it notarized; that he then ran back to Judge Turner's chambers and had the order of default signed; that, although his office was in the Smith Tower building, he did not stop there because the express elevator to the notary's office did not stop at that floor; and that he did not talk to his secretary until after the New Year's holiday, January 2nd, at which time she told him of the service.

The hearing panel found that Mr. Caffrey knew of the service of special appearance at the time he obtained the order of default, concluded that he had violated Canons

of Ethics 22, 25, 29, and 41, and recommended that he be suspended from the practice of law for 30 days. The Board of Governors approved the findings, conclusions and recommendation of the hearing panel and adopted them as its own.

The evidence of Mr. Caffrey relating to his lack of knowledge of the special appearance at the time the order of default was signed appears to be in direct conflict with the testimony of Mr. Conte and Mr. Brandzel which supports the findings of the hearing panel and Board of Governors. Although the findings of the hearing panel and the Board of Governors are entitled to due weight, we are not bound by them since the power over disciplinary proceedings is vested solely in this court. *In re Simmons*, 59 Wn. (2d) 689, 369, P. (2d) 947 (1962), and cases cited therein. However, we need not resolve this testimony since there is no conflict in the record that Mr. Caffrey was fully aware of the fact, when he discovered, on January 2nd, the previous service of special appearance by Mr. Conte, that he had misrepresented to Judge Turner the propriety of signing the order of default and had therefore wrongfully obtained it.

Knowing full well he had wrongfully obtained the order of default, Mr. Caffrey was content to let the record remain as it was. He, at no time, attempted to contact Mr. Conte or the court regarding the wrongful entry of the order. He testified he felt that, despite having obtained the wrongful order of default, he had no duty to set it aside; he was of the opinion that it was up to Mr. Conte to undo his acts. Failure to act was not Mr. Caffrey's only breach. To make matters worse, he sent a copy of the motion, affidavit and order of default by mail to Mr. Conte on January 5th, which he claims was done for Mr. Conte's information only, and filed his affidavit of service on January 8th.

Canon of Professional Ethics 22, RCW Vol. 0, states:

"The conduct of the lawyer before the court *and with other lawyers* should be characterized by candor and fairness.

"  .   .   .

"These and all kindred practices are unprofessional and unworthy of an officer of the law charged, as is the lawyer, with the duty of aiding in the administration of justice." (Italics ours.)

Canon of Professional Ethics 29, RCW Vol. 0, states:

"Lawyers should expose without fear or favor before the proper tribunals corrupt or dishonest conduct in the profession, and should accept without hesitation employment against a member of the bar who has wronged his client. The counsel upon the trial of a cause in which perjury has been committed owe it to the profession and to the public to bring the matter to the knowledge of the prosecuting authorities. The lawyer should aid in guarding the bar against the admission to the profession of candidates unfit or unqualified because deficient in either moral character or education. *He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice.*" (Italics ours.)

Canon of Professional Ethics 41, RCW Vol. 0, states:

"When a lawyer discovers that some fraud or deception has been practiced, which has unjustly imposed upon the court or a party, *he should endeavor to rectify it*; at first by advising his client, and if his client refuses to forego the advantage thus unjustly gained, he should promptly inform the injured person or his counsel, so that they may take appropriate steps." (Italics ours.)

Rule for Discipline of Attorneys 1, RCW Vol. 0, provides in part:

"An attorney at law may be censured, reprimanded, suspended, or disbarred for any of the following causes, hereinafter sometimes referred to as violations of the rules of professional conduct:

"   . . .

"C.   Violation of his oath or duties as an attorney.

"   . . .

"J.   Violation of the canons of ethics of the profession adopted by the supreme court of the state of Washington."

It was the duty of Mr. Caffrey, upon learning the facts, to notify promptly both the court and Mr. Conte that he erroneously had led the court to believe it was proper to sign the order of default. He was obligated to correct the

order of default which he had wrongfully obtained. By his failure to inform the court or to act affirmatively in moving to vacate the order of default, by his mailing of the order to Mr. Conte on January 5th, and by his filing of the affidavit of service on January 8th, when he knew he had wrongfully obtained the order of default. Mr. Caffrey evinced a lack of candor both to the court and to opposing counsel which constituted a violation of Canons of Ethics 22, 29, and 41, *supra*.

We therefore approve the recommendation of the Board of Governors, and it is ordered that Bradford A. Caffrey be suspended from the practice of law in the state of Washington for a period of 30 days from the date this decision becomes final.

OTT, C. J., WEAVER, ROSELLINI, HAMILTON, and HALE, JJ., concur.

HILL, J. (concurring specially)—I concur in the result. It is true, as the majority points out, that the final responsibility for determining the facts in a disciplinary proceeding involving a suspension or disbarment[1] is in this court. However, I see no reason, on this record, for this court to have any hesitancy in accepting the findings of the trial committee (which heard the witnesses and observed their demeanor), which were adopted by the Board of Governors after reading and considering the record now before us.

DONWORTH and FINLEY, JJ., concur with HILL, J.

[1] Or even a reprimand, if the record comes to this court by reason of the attorney's refusal to accept the reprimand at the hands of the Board of Governors.